UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BOBBY D. MORGAN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 14–cv-0770 (KBJ) |
| UNITED STATES PAROLE COMMISSION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

Pro se plaintiff Bobby D. Morgan, a prisoner who is currently incarcerated at the Hazelton Federal Correctional Institution in Bruceton Mills, West Virginia, has filed the instant action against the United States Parole Commission ("the Commission") and Commission Hearing Examiner Paul R. A. Howard ("Howard," and collectively, "Defendants") under 42 U.S.C. § 1983. In 2008, the Commission revoked the parole period that Morgan had been serving upon his release from prison for two 1988 District of Columbia convictions for armed robbery and carrying a pistol without a license. Howard was the official who presided over Morgan's parole revocation hearing; the Commission adopted Howard's recommendation that Morgan's parole be revoked following new convictions for weapons offenses in North Carolina, and the presumptive reparole date was set based on the Commission's then-current revocation guidelines. Morgan's complaint claims, in essence, that the Commission violated the Ex Post Facto Clause of the U.S. Constitution by applying the parole guidelines that were in effect in 2008, when Howard conducted the revocation hearing, rather than guidelines that were

in effect in 1988, when Morgan committed the underlying offenses. (Compl., ECF No. 1, at 3.) Morgan seeks money damages against the Commission and against Howard (in his official and individual capacities) for "subject[ing] him to a longer period of incarceration" upon revocation than would have been the case if the 1987 regulations had been applied, as well as an order that the Commission afford him "a new parole hearing with instructions to the [Commission] to exercise its discretion within the framework created by the 1987 Regulations[.]" (Compl. at 3; Pl.'s Mem. of Law in Supp. of Compl. ("Pl.'s Compl. Mem."), ECF No. 1-2, at 5; Am. & Suppl. Compl., ECF No. 13, at 1.)[1]

Before this Court at present is Defendants' motion to dismiss Morgan's complaint. (Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 15.) In this motion, Howard and the Commission argue, among other things, that they are immune from the claims for monetary damages that Morgan has brought in this action, and that the doctrine of res judicata bars all of Morgan's claims relief because, in the context of a habeas action that he filed in federal district court in West Virginia, he previously litigated (and lost) the legal argument that his parole sentence violates the Ex Post Facto Clause. (Defs.' Mot. at 10-11.) For the reasons explained below, this Court has concluded that Defendants are, indeed, immune from Morgan's damages claims, and that res judicata bars all of his claims, including those for injunctive relief. Therefore, as set forth in the Order that this Court issued on March 31, 2016, Defendants' motion

---

[1] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

to dismiss has been **GRANTED**, and Morgan's complaint has been **DISMISSED** in its entirety.

I.  **BACKGROUND**

   A.  **Morgan's District Of Columbia Sentence And Parole Violations**

In September of 1998, the Superior Court of the District of Columbia convicted Morgan of armed robbery and carrying a pistol without a license and sentenced him to consecutive terms of imprisonment of 15 years to life on the robbery charge and one year on the firearms charge. (Pl.'s Compl. Mem. at 7.) Morgan was released on parole in March of 2003 to the Western District of North Carolina, and in 2007, while under supervision in North Carolina, he was arrested for and charged with discharging a weapon into occupied property and assault with a deadly weapon causing serious injury. (*Id.* at 8.) Shortly thereafter, the Commission submitted an application for a parole violation warrant, alleging that Morgan had violated the conditions of his parole as a result of these new offenses and also that he had used illegal narcotics while under supervision. *See Morgan v. Berkebile*, No. 09-cv-0966, 2011 WL 5040432, at *1 (S.D. W. Va. Sept. 7, 2011) (*Morgan I*), *adopted by* 2011 WL 5040435 (S.D. W. Va. Oct. 21, 2011) (*Morgan II*).[2] Morgan was arrested on the Commission's parole violation warrant on December 7, 2007. (Pl.'s Compl. Mem. at 8.)

On August 19, 2008, the Commission held a parole revocation hearing in Morgan's case, over which Howard presided. *See Morgan I*, 2011 WL 5040432, at *1. As a result of the hearing, Howard found that Morgan had violated the conditions of his

---

[2] As a D.C. Code offender who was still on parole at the time of the new offenses, Morgan was subject to the Commission's supervision pursuant to the National Capital Revitalization and Self–Government Improvement Act of 1997, Pub. L. No. 105–33, §§ 11000–11723, 111 Stat. 251, 712–87 (1997). *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1100 (D.C. Cir. 2005).

parole and determined, under the Commission's 2000 parole revocation guidelines, that Morgan's guideline range was 78–110 months of incarceration. *Id.* Accordingly, Howard recommended that the Commission revoke Morgan's parole and a set presumptive reparole date of July 24, 2016, which would result in Morgan serving an additional 110 months in prison. *Id.* On September 19, 2008, the Commission issued a "Notice of Action," in which it implemented Howard's recommendations. *Id.* Morgan subsequently appealed that determination, and the National Appeals Board affirmed the Commission's decision. *Id.* at *2.

### B. Morgan's West Virginia Petition For A Writ Of Habeas Corpus

On August 25, 2009, Morgan filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of West Virginia. *Id.* His petition included a claim that the Commission's "retroactive application of new federal reparole guidelines" in his case established a "[p]rima facie ex post facto claim" because there was "a significant risk that his punishment [was] increased" due to the application of those guidelines, when compared to the reparole guidelines that were in effect when he committed his original offenses in 1988. *Id.* The matter was referred to a magistrate judge, who recommended that Morgan's habeas petition be dismissed in its entirety. *See id.* at *1. Regarding the ex post facto claim, the assigned magistrate judge found in the first instance that Morgan "failed to establish[] that the 2000 Guidelines were retroactively applied during his parole revocation proceedings." *Id.* at *6. The magistrate judge also found that, even if the Commission had improperly applied the 2000 Guidelines, this did not amount to an ex post facto violation because this purported error "did not . . . create a significant risk of prolonging [Morgan's] incarceration." *Id.* at *7; *see also Fletcher v. Reilly*, 433 F.3d 867, 877 (D.C. Cir.

2006) (holding that "a retroactively applied parole or reparole regulation or guideline violates the Ex Post Facto Clause if it creates a significant risk of prolonging an inmate's incarceration[]").

The West Virginia district court judge adopted the magistrate judge's report and recommendation, expressly rejecting Morgan's objection to the magistrate judge's recommendation regarding his ex post facto claim, and dismissed Morgan's petition. *See Morgan II*, 2011 WL 5040435, at *4. The court explained that the Commission's application of year 2000 guidelines to evaluate the parole consequences of conduct that Morgan has engaged in in 2007 was not a "retroactive" application of the guidelines, and in any event, "[Morgan's] objection that he was subjected to a significant risk of prolonging his incarceration [through application of the 2000 Guidelines] is without merit" because the 1987 Regulations afforded the parole board "discretion to depart from the guidelines" and permitted it to set whatever reparole date that it deemed appropriate. *Id.*

   C.   **The Instant Lawsuit**

Proceeding pro se, on May 5, 2014, Morgan filed a lawsuit in this Court under 42 U.S.C. § 1983 against Howard—in his personal and official capacities—and the Commission. (*See* Compl.). *See also* 42 U.S.C. § 1983 (permitting suit against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws").[3] As he did in the habeas petition that he filed in West

---

[3] The D.C. Circuit has held that individual members of the Commission may be sued under section 1983 for actions taken with respect to D.C. Code offenders, despite the Commission's general

Virginia, Morgan's initial complaint claimed that Defendants violated the Ex Post Facto Clause of the Constitution by applying the year 2000 parole regulations during his parole revocation proceedings, which, according to Morgan, had the effect of "subject[ing] him to a longer period of incarceration" than if Defendants had applied the former D.C. Board of Parole's 1987 regulations. (Compl. at 3.) The complaint also alleged that Howard further violated the Ex Post Facto Clause "by incorrectly imposing a term of imprisonment exceeding the sanction imposed for the crime that occurred in North Carolina." (*Id.*)[4] As relief, the complaint requested "a rehearing with reconsideration of his parole eligibility" under the former D.C. Board of Parole's 1987 regulations. (Compl. at 3.)

In December of 2014, Defendants moved to dismiss Morgan's complaint based on res judicata (Defs.' Mot. to Dismiss, ECF No. 7); this Court denied the motion without prejudice after Morgan requested leave to file a supplemental and amended complaint—a request that the Court granted. (*See* Min. Order of Mar. 3, 2015.) In the new pleading, Morgan continued to press the core ex post facto allegation; the only

---

status as a federal agency, and therefore, it appears that Morgan has properly invoked section 1983 for his individual capacity claims against Howard. *See Settles*, 429 F.3d at 1104. Whether or not the Commission is a "person" acting under color of state law, for the purpose of Morgan's suit against the Commission, appears to be an unsettled question in this Circuit. *See id.* at 303. However, in the context of the instant Memorandum Opinion, the Court will assume that the Commission qualifies as such a person.

[4] Morgan also asserted that Howard had "violated 28 C.F.R. [§] 2.219(a)(1) by revoking his parole for more than five years." (Compl. at 3.) That provision is contained in a C.F.R. subpart that applies to D.C. Code offenders who are on supervised release following completion of a term of imprisonment that the Superior Court orders. *See* 28 C.F.R. Ch. I, Pt. 2, Subpt. D. A separate subpart—Subpart C— applies to D.C. Code offenders such as Morgan who have been released on parole, *see* 28 C.F.R. Ch. I, Pt. 2, Subpt. C, and that section does not contain an equivalent provision.

substantive addition was a demand for $250,000 in monetary damages as a result of the alleged violation of his constitutional rights. (Am. & Suppl. Compl. at 1.)[5]

On March 20, 2015, Defendants filed the instant motion to dismiss in which they argue that res judicata bars Morgan's complaint in its entirety because Morgan previously litigated the question of whether or not his parole sentence violates the ex post facto clause in the context of his West Virginia habeas suit. (*Id.* at 10–16.) Defendants also contend that they are immune to lawsuits for money damages under the circumstances presented here. (*See id.* at 16–18 (asserting sovereign immunity); *id.* at 25–29 (asserting quasi-judicial immunity)). They further assert that Morgan has failed to state a claim upon which declaratory or equitable relief can be granted (*id.* at 29–30), and that this action is otherwise plagued by a number of procedural defects including a failure to effect proper service (*id.* at 18–19), lack of personal jurisdiction (*id.* at 19–23), and improper venue (*id.* at 23–24). Morgan has filed a brief in opposition to the motion to dismiss and a surreply (*see* Pl.'s Opp'n to "2d" Mot. to Dismiss, ECF No. 20; Pl.'s Traverse to Defs.' Reply, ECF No. 22), and Defendants' motion is now ripe for this Court's consideration.

## II.   LEGAL STANDARDS

### A.   Motions To Dismiss For Lack Of Subject Matter Jurisdiction Under Rule 12(b)(1)

A motion to dismiss based on sovereign immunity or Eleventh Amendment immunity is evaluated under Federal Rule of Civil Procedure 12(b)(1) as a motion to

---

[5] Morgan indicates that his supplemental pleading is an addition to (not a substitution for) the original complaint. (*See* Am. & Suppl. Compl. at 1.) Consistent with *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), this Court reads the supplemental pleading and the original pleading together as the operative complaint.

dismiss for lack of subject matter jurisdiction. The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Halcomb v. Office of the Senate Sergeant-at-Arms of the U.S. Senate*, 209 F. Supp. 2d 175, 176 (D.D.C. 2002). Indeed, it is ordinarily "'presumed that a cause lies outside [the federal courts'] limited jurisdiction,' unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction[.]" *Muhammad v. FDIC*, 751 F. Supp. 2d 114, 118 (D.D.C. 2010) (first alteration in original) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

When a defendant files a motion to dismiss asserting Rule 12(b)(1) grounds in addition to other bases for dismissal, "this Circuit has held that the court must first examine the Rule 12(b)(1) challenges . . . because if it must dismiss the complaint for lack of subject[-]matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined[.]" *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C. 2011) (first alteration in original) (citations omitted); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction." (citation omitted)). Moreover, "the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under . . . Rule 12(b)(6)." *Schmidt*, 826 F. Supp. 2d at 65 (citing *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003)). Still, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008); however, it need

not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations[,]" *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

### B. Motions To Dismiss Under Rule 12(b)(6) Based On Res Judicata

The res judicata doctrine bars relitigation of claims or issues that were or could have been litigated in a prior action. *Alford v. Providence Hosp.*, 60 F. Supp. 3d 118, 124 (D.D.C. 2014). "Res judicata is an affirmative defense that is usually pled in a defendant's answer, but courts have also allowed parties to assert the defense in a 12(b)(6) motion to dismiss." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F. Supp. 2d 182, 189 (D.D.C. 2011) (citation omitted). A defendant may raise the res judicata defense in a Rule 12(b)(6) motion "where [its applicability can be] established from the face of the complaint, matters fairly incorporated within it, and matters susceptible to judicial notice." *Lewis v. DEA*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011) (citations omitted). In the context of a Rule 12(b)(6) res judicata motion, a court may take judicial notice of its own records, public records from other proceedings, and documents attached as exhibits or incorporated by reference in the complaint. *See, e.g.*, *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013); *Hemphill v. Kimberly–Clark Corp.*, 605 F. Supp. 2d 183, 186 (D.D.C. 2009).

Significantly for present purposes, courts regularly find that the resolution of a constitutional claim in with the context of a petition for a writ of habeas corpus can have a preclusive effect on a subsequent section 1983 action that raises the same constitutional claim. *See, e.g.*, *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 264 (D.D.C. 2011) (applying issue preclusion to bar prisoner's section 1983 claim against former parole commissioner relating to calculation of his release date where prisoner had raised and lost this issue in a prior habeas action and "there is no reason to think that

Plaintiff lacked a strong incentive to litigate this issue in the habeas proceeding; it was the entire basis of his claim[]").

### C. Application Of The Pleading Rules To Pro Se Parties

Finally, when applying the legal framework discussed above to evaluate the pending motions to dismiss, this Court must be mindful of the fact that Morgan is proceeding in this matter pro se. It is well established that a court must "liberally construe" the pleadings of pro se parties and hold such pleadings "to less stringent standards than formal pleadings" that lawyers draft. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). But it is also quite clear that "[t]his benefit is not . . . a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009) (citation omitted); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993).

Thus, even a pro se plaintiff must meet his burden of proving subject matter jurisdiction if his complaint is to survive a Rule 12(b)(1) motion to dismiss. *See, e.g.*, *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177 (D.D.C. 2007) (dismissing complaint where pro se plaintiff failed to prove subject matter jurisdiction). Likewise, although a pro se complaint "must be construed liberally, the complaint must still present a claim on which the Court can grant relief[.]" *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013) (citation omitted); *see also Moore v. Motz*, 437 F. Supp. 2d 88, 90 (D.D.C. 2006) (noting that "[e]ven a pro se plaintiff's inferences . . . need not be accepted" if they "are unsupported by the facts set out in the complaint" (citation omitted)); *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981) (noting that a pro se complaint must state a claim upon which relief can be granted).

### III. ANALYSIS

Morgan seeks monetary damages and injunctive relief against the Commission and against Howard (in his official and individual capacities), on the basis of two alleged Ex Post Facto Clause violations. He alleges (1) that both the Commission and Howard improperly applied parole regulations from the year 2000 when his parole was revoked in 2008, rather than the regulations in effect at the time of his underlying offense, and (2) that Howard "incorrectly impos[ed] a term of imprisonment exceeding the sanction imposed for the crime [that led to revocation of his parole]." (Compl. at 3.) However, as explained below, this Court concludes that Morgan's damages claims cannot proceed because both defendants are entitled to immunity, and furthermore that all of the claims that Morgan has brought in this action are entirely precluded based on the doctrine of res judicata. Therefore, Morgan's complaint must be dismissed for lack of subject matter jurisdiction and/or failure to state a claim, as Defendants request.

### A. Sovereign Immunity Bars Morgan's Claims Against The Commission And Howard In His Official Capacity

"It is axiomatic that the United States [and its agencies] may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature."). Under the established law of this circuit, when "administering parole for D.C. Code offenders, the Commission retains the immunity it is due as an arm of the federal sovereign[,]" *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005), and thus, Morgan's claims for monetary damages against the Commission qualify as claims against the United States that can only survive upon a showing that there has been an applicable waiver of the

sovereign immunity bar.  *See Meyer*, 510 U.S. at 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Cornish v. United States*, 885 F. Supp. 2d 198, 205 (D.D.C. 2012) (same).  The same is true of Morgan's damages claims against Howard, because a suit against a federal government employee "in his official capacity" qualifies as a suit against the United States.  *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Brandon v. Holt*, 469 U.S. 464, 472–73 (1985).

The D.C. Circuit has long held that "sovereign immunity blocks a § 1983 claim against the Commission[,]" *Settles*, 429 F.3d at 1106—and this holding plainly dooms the claims for monetary damages that Morgan has brought against the Commission and against Howard in his official capacity in this case.  Morgan's only response is to argue that the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 ("FTCA") contains a waiver of sovereign immunity that should be deemed to apply.  (*See* Pl.'s Opp'n to "2d" Mot. to Dismiss, at 18–19 (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).)  But insofar as Morgan has asserted a *constitutional* tort (*see, e.g.*, Compl. at 3 (arguing that Defendants "violated the Ex Post Fact[o] Clause of the United States Constitution")), it is clear that he cannot rely upon that particular waiver.  *See Meyer*, 510 U.S. at 478 (holding that constitutional tort claims are not cognizable under the FTCA).  Morgan has not identified any other applicable waiver of the sovereign immunity bar, and thus he has clearly failed to carry his burden of establishing that this Court has subject matter jurisdiction over his claims for monetary damages from the Commission and from Howard in his official capacity.

In other words, even construing the complaint's claims liberally, this Court agrees with Defendants that Morgan's claims for monetary damages implicate the sovereign immunity doctrine and are ultimately barred because Morgan has failed to demonstrate that there has been a waiver of sovereign immunity for the claims he seeks to maintain here.

### B. Howard Is Entitled To Quasi-Judicial Immunity With Respect To Morgan's Individual Capacity Claim Regarding His Parole Recommendation

In addition to his claims for monetary damages against the Commission and against Howard in his official capacity, Morgan has also claimed entitlement to monetary damages against Howard in his *individual* capacity. (*See* Am. & Suppl. Compl. at 1.) Howard moves to dismiss the individual capacity claims on several grounds, but this Court finds that it need go no further than his contention that Howard is entitled to absolute immunity because he performed the alleged wrongful acts in the context of his role as a Commission hearing officer. (Defs.' Mot. at 24–25.)

Members of the judiciary are entitled to absolute immunity for acts performed in their judicial capacities, and the Supreme Court has extended this immunity to certain officials who perform quasi-judicial functions. Courts in this district readily find that parole hearing officers are "'federal agents performing a quasi-judicial function in making a parole determination in [plaintiff's] specific case[s],'" and that quasi-judicial immunity therefore protects them from civil suits arising from those parole determinations. *Nelson v. Williams*, 750 F. Supp. 2d 46, 52 (D.D.C. 2010) (quoting *Anderson v. Reilly*, 691 F. Supp. 2d 89, 92 (D.D.C. 2010) (alteration in original)), *aff'd*, No. 10-5429, 2011 WL 2618078 (D.C. Cir. June 23, 2011); *accord Harris v. Fulwood*, 989 F. Supp. 2d 64, 73 (D.D.C. 2013) (citing cases extending absolute immunity to

parole hearing examiners who perform "quasi-judicial functions"), *aff'd on other grounds*, 611 F. App'x 1 (D.C. Cir. 2015).  This Court sees no reason to believe that such a designation should not apply to Howard, whose parole-related decision Morgan seeks to challenge here.

Morgan acknowledges that courts typically extend judicial immunity to the officials who make decisions about whether to grant or deny parole (*see* Pl.'s Opp'n at 22), but he argues that this Court should reach a different result because Howard has since retired (*id.* at 23), and because Howard "was acting in an administrative capacity, took off his official hat, and acted personally negligent[ly] in his recommendation of parole revocation" (*id* at 25).  There appears to be no factual basis for Morgan's conclusory assertion that Howard was wearing some other "hat"—something other than one worn by a parole hearing officer—when he decided to recommend revocation of Morgan's parole, and he provides no support for his contention that negligence divests judicial officers of immunity.  Indeed, to the contrary, it is precisely because judicial officers are immune to suit for negligence with respect to their decision making that absolute (quasi-judicial) immunity ordinarily applies.  *See Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (absolute immunity protects officials who make negligent or even malicious decisions); *cf. Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) (qualified immunity protects only those officials who have acted in an objectively reasonable manner).

Thus, Morgan has failed to convince this Court that it should depart from the long line of precedent that establishes that quasi-judicial immunity protects hearing officers with respect to claims for monetary damages arising from their parole

revocation determinations. *See Nelson*, 750 F. Supp. 2d at 52; *Harris*, 989 F. Supp. 2d at 73; *see also Farrish v. Miss. State Parole Bd.*, 836 F.2d 969, 973–74 (5th Cir. 1988) ("[I]t appears that every circuit that has considered the issue has uniformly adopted [the] view" that "officials deciding whether to grant or deny parole enjoy absolute immunity while engaging in their official duties.").

### C. Res Judicata Bars Plaintiff From Relitigating His Claims For Injunctive Relief

Defendants insist that Morgan's claim for declaratory relief in the form of "a rehearing with reconsideration of his parole eligibility under the 1987 Regulations to his D.C. Code violations[]" (Compl. at 3) is also subject to dismissal on procedural grounds. (Defs.' Mot. at 11–12.) Specifically, it is undisputed that, in a prior action that Morgan filed in the Southern District of West Virginia, Morgan litigated the precise ex post facto claim that he raises in the instant suit. *Morgan I*, 2011 WL 5040432, at *2 (alleging, in Count 6 of the habeas petition, that his revocation sentence violated the Ex Post Facto Clause because the Commission retroactively applied federal reparole guidelines); *Morgan II*, 2011 WL 5040435, at *4 (overruling Morgan's objections to the magistrate judge's finding that his reparole sentence did not violate the Ex Post Facto Clause). In that prior case, which Morgan brought under 28 U.S.C. § 2241, the court determined that (1) no ex post facto violation had occurred because the Commission's application of the year 2000 guidelines to evaluate conduct that allegedly violated the parole conditions when Morgan engaged in it in 2007 was not a retroactive application of the guidelines for purposes of establishing the first element of an ex post facto claim, and (2) even if the Commission had applied the guidelines retroactively, Morgan could not show that he was subjected to a significant risk of

prolonged incarceration (the second element of an ex post facto claim) because the 1987 guidelines authorized the imposition of the same sentence he received, since "the parole board had discretion to depart" from the recommended guideline sentence under those guidelines. *See Morgan II*, 2011 WL 5040435, at *4. Defendants point to this habeas decision and argue that res judicata prevents Morgan from raising his ex post facto claim in the instant case. (Defs.' Mot. at 10–16.)

This Court agrees. The doctrine of res judicata includes the principle of issue preclusion, which generally prevents a litigant from relitigating "'an issue of fact or law necessary to [a] judgment'" where that issue was previously adjudicated on the merits "'in a suit on a different cause of action involving a party to the first case.'" *Ficken v. Golden*, 696 F. Supp. 2d 21, 31-32 (D.D.C. 2010) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (other citation omitted)). As noted above, and contrary to Morgan's assertions, issue preclusion undoubtedly applies when the prior action was a habeas proceeding. *See, e.g.*, *Wilson*, 772 F. Supp. 2d at 264. And issue preclusion arises in circumstances in which three factors exist: (1) the issue was "actually litigated" in the prior litigation; (2) the prior litigation was "actually and necessarily determined by a court of competent jurisdiction"; and (3) "preclusion in the second [case] [does] not work an unfairness." *Id.* at 261 (quoting *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (first alteration in original) (other citation omitted)). One circumstance in which "[i]ssue preclusion can work an unfairness [is] where 'the party to be bound lacked an incentive to litigate' in the first action the issue to be precluded in the second." *Id.* (quoting *Otherson*, 711 F.2d at 273).

Here, the West Virginia habeas court's decision with respect to Morgan's petition easily satisfies the first two prongs of the issue preclusion test—there is no question that the ex post facto claim was actually adjudicated and that a court of competent jurisdiction decided it. *See Nelson*, 750 F. Supp. 2d at 52 (holding that a parolee claiming improper application of parole guidelines "cannot now relitigate an issue that has been 'actually and necessarily determined by a court of competent jurisdiction [because its] determination is conclusive'") (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979) (alteration in original) (other citations omitted)). As for the third requirement, this Court concludes that preventing Morgan from relitigating the ex post facto question is not obviously unfair because Morgan had every opportunity—and incentive—to litigate this question fully before the West Virginia court. Moreover, to the extent that Morgan is here asserting an unfairness-type argument related to the fact that the West Virginia federal magistrate judge who initially considered his habeas petition relied on authority "that *predates* the National Capital Revitalization and Self-Government Improvement Act, which vested the [Commission] with the sole authority to administer the District of Columbia Parole system," (Pl.'s Traverse to Defs.' Reply to Pl.'s Reply to Defs.' Mot. to Dismiss, ECF No. 10, at 5), this Court sees nothing inherently unfair or untoward about the application of past precedent to address a constitutional question; after all, adherence to precedent is venerated practice of the state and federal courts. *See, e.g.*, *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015) ("Stare decisis—in English, the idea that today's Court should stand by yesterday's decisions—is 'a foundation stone of the

rule of law.'") (quoting *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2036 (2014)).

The bottom line is that Morgan's dissatisfaction with the West Virginia habeas court's ruling provides no basis for this Court to revisit the ex post facto question, and to find otherwise would contravene core principles of res judicata. *See, e.g.*, *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("[R]es judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."); *Polsby v. Thompson*, 201 F. Supp. 2d 45, 48 (D.D.C. 2002) ("The purpose of res judicata is to 'conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal litigation.'" (quoting *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981)). Accordingly, this Court easily concludes that Morgan's claim for injunctive relief in the form of new parole revocation hearing is precluded, and thus must be dismissed under Rule 12(b)(6).[6]

---

[6] Notably, although recent case law developments call into question aspects of the West Virginia court's habeas decision, those developments do not affect this Court's conclusion regarding the preclusive effect of res judicata. The recent decision of the D.C. Circuit in *United States v. Head*, No. 14-3055, 2016 WL 1168591 (D.C. Cir. Mar. 25, 2016), for example, seemingly conflicts with the habeas court's determination that the Commission did not retroactively apply the parole guidelines in Morgan's case and that, even if it had, that any such application did not impact Morgan's substantial rights. *Morgan I*, 2011 WL 5040432, at *2; *Morgan II*, 2011 WL 5040435, at *4. However, it is well established that "the res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *see also Harrison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981) ("[C]ivil judgments, unlike criminal convictions, cannot be collaterally attacked on the basis of subsequent judicial pronouncements.").

## IV. CONCLUSION

The instant section 1983 action appears to be Morgan's attempt to re-raise claims that he has previously litigated and lost, against parties who are protected by either sovereign or absolute immunity. These defects are incurable; accordingly, as set forth in the Court's prior order, the Defendants' motion to dismiss the complaint has been **GRANTED,** and this case has been **DISMISSED**.

Date:  April 4, 2016

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge